UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KENDRA MATTHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | 14-3107 |
| ) | |
| SHERLY THOMPSON, *et al.* ) | |
| ) | |
| Defendants. ) | |

**SUMMARY JUDGMENT OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for failure-to-protect for events that allegedly occurred during her incarceration at Dwight Correctional Center. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Docs. 62, 64). The motions are granted.

**LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All facts must be construed in the light most favorable to the

non-moving party, and all reasonable inferences must be drawn in his favor.  <u>Ogden v. Atterholt</u>, 606 F.3d 355, 358 (7th Cir. 2010).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## FACTS

At all times relevant, Plaintiff was incarcerated at Dwight Correctional Center ("Dwight").  The Defendants were employed at Dwight in the following capacities:  Defendant Thompson was the Warden; Defendant Davidson was an Internal Affairs officer; Defendant Brennisen was a correctional lieutenant; and, Defendants Cerda, Wilson, and Kretchmer were correctional officers.

Plaintiff was involved in physical altercations with two different inmates on consecutive days. The two altercations are related as it pertains to the motivations for fighting and the alleged overarching supervisory roles of Defendant Thompson and Defendant Davidson, but otherwise involve different sets of prison officials. The altercations occurred on August 29, 2012, and August 30, 2012.

At some point prior to the altercations, Plaintiff shared a cell with Inmate Toni Hale in the protective custody unit at Graham. Disciplinary reasons prompted Hale's removal and, in the process, Hale's television was apparently broken. Hale blamed Plaintiff.

Hale began threatening Plaintiff with physical harm by telling other inmates to deliver verbal messages to Plaintiff. Plaintiff testified that the specific threat was that Hale was going to "whoop [Plaintiff's] ass." Pl.'s Dep. 19:22-24. At first, Plaintiff did not lend much credence to these threats. Pl.'s Dep. 15:22-24 ("First I blew her off…thinking she [was] playing because she was just our roommate. We didn't have no problem."). Hale then began yelling verbal threats through a gate that separated the protective custody and general population units where Plaintiff and Hale were housed,

respectively.  Plaintiff also heard a rumor that Hale had compensated another inmate (Weslena Poole) to inflict physical harm upon Plaintiff.

Plaintiff requested a "Keep Separate From" ("KSF") order against Hale from her correctional counselor on August 20, 2012. See Matthews v. Thompson, *et al.*, No. 13-CV-1025, ECF No. 1-1 at 1 (C.D. Ill., filed January 17, 2013).[1]  As a result, an Internal Affairs officer who is not a defendant in this lawsuit interviewed Plaintiff about the alleged threats and found the threats unsubstantiated. Plaintiff's request for a "Keep Separate From" order was denied on August 21, 2012, upon recommendation of the Internal Affairs office.  Id.  Defendant Davidson and Defendant Thompson signed off on this decision.  Id.

In addition to the KSF, Plaintiff testified that she had completed Protective Custody Unit ("PCU") contracts against several other inmates.  A PCU contract is different from a KSF: a PCU contact informs prison officials that an inmate feels threatened by other inmates, while a KSF requests that prison officials isolate the

---

[1] Plaintiff filed the original form in her first lawsuit regarding these events.  That lawsuit was dismissed without prejudice for failure to exhaust administrative remedies.  Plaintiff referenced the document's existence in her deposition but did not file a copy into the record in this case.

requesting inmate from the other inmate.  Pl.'s Dep. 40:12-41:11. The contents of a grievance Plaintiff filed suggest that prison officials at Dwight will only separate inmates when a KSF is in effect, even while the inmates are housed in the PCU.  (Doc. 67-1 at 12-13).  Plaintiff filed a PCU contract against Toni Hale and another inmate on August 16, 2012.  (Doc. 67-1 at 14).

On August 29, 2012, Plaintiff was placed in a cell with three (3) other inmates.  Among those inmates was Weslena Poole. Plaintiff notified Defendant Wilson that she (Plaintiff) had written PCU contracts against Poole so they should not have been in the same cell.  Plaintiff, however, testified that she did not have a KSF against Poole.  Pl.'s Dep. 41:14-18.  Defendant Wilson notified her supervisor (Defendant Brennisen).  Id. 26:16-18.

According to Plaintiff, Defendant Wilson relayed a message from Defendant Brennisen that Plaintiff had two options if she did not want to be in the cell:  go to segregation or go to the Mental Health Unit.  Id. 26:19-23.  Plaintiff chose neither and a fight between her and Poole ensued.  Plaintiff suffered scratches.

On August 30, 2012, Defendant Cerda escorted Plaintiff to a new cell.  Plaintiff had been assigned to share a cell with Hale.

Upon recognizing this, Plaintiff told Defendant Cerda that she did not want to go into the cell.  Some dispute remains as to the exact contents of that conversation, but the end result was that Plaintiff went into the cell.  Defendant Cerda walked away and a fight ensued.  Prison officials broke up the fight through use of chemical spray on the two inmates, but not before Plaintiff had seriously injured Hale.  Plaintiff suffered scratches.

Plaintiff testified that immediately prior to the fight Hale had stated her intentions to harm Plaintiff.  Pl.'s Dep. 48:13-14 (Hale stated, "…I'm about to whoop your ass for breaking my tv."). Plaintiff stated she responded by standing against a wall and braiding her hair.  Id. 48:15-18 ("So I just leaned back on the door, again, like, "This girl must be out of her mind."  So I started braiding my hair….").  According to Plaintiff, Hale leaned down, put on her shoes, and began swinging.  Defendant Kretchmer was nearby.  When he heard other inmates yelling about a fight, he ran up to the cell and notified other prison officials via radio.

Aside from the brief conversation with Defendant Cerda, where the Court will accept Plaintiff's allegations as true that she (Plaintiff) informed Cerda of the potential fight, Plaintiff never personally

notified any of the Defendants of the threats from Hale.  Pl.'s Dep. 65:6-19 (Plaintiff told correctional officers Strowmatt, Howser, Buffert, White, Frigidson, and Shaw); 81:16-18 (Kretchmer did not know about Plaintiff's KSF request).

## ANALYSIS

To succeed on a failure to protect claim, a plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and, (2) prison officials acted with "deliberate indifference" to that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  For purposes of satisfying the first prong, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  Id. at 843.  A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to

prison officials about a specific threat to his safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996) (quoting McGill v. Duckworth, 944 F.3d 344, 349 (7th Cir. 1991)). Liability attaches where "deliberate indifference by prison officials effectively condones the attack by allowing it to happen...." Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996).

### August 29, 2012 Incident

Plaintiff told Defendant Wilson that there was an issue between her and inmate Poole, and a reasonable inference exists that Defendant Brennisen was also aware of a potential issue through Defendant Wilson.

Plaintiff has not shown that a substantial threat of harm existed on August 29, 2012 with regard to Poole. Plaintiff admitted in her deposition that she had not requested a KSF against Poole and that Poole "had come out of a blind spot" because they had been roommates before without any problems. Pl.'s Dep. 22:3-6; 24:2-10. Plaintiff also admitted that she did not ask for a KSF against Poole and another inmate because they were not threatening her, Plaintiff just wanted to avoid the nonsense. Pl.'s Dep. 41:19-24 ("Now, if they was [sic] doing the same thing Hale

was doing, threatening me and all that, then I would have asked for a keep separate…I really was trying to avoid BS….").  While Defendant Wilson and Defendant Brennisen may have been aware of Plaintiff's asserted issues, the record discloses that they could not have been aware of a specific threat of harm because, according to Plaintiff, none existed.

Moreover, Defendant Wilson did not ignore Plaintiff's concerns. Defendant Wilson notified her lieutenant, Defendant Brennisen, and relayed Plaintiff's options to be removed from the cell.  In fact, Plaintiff had called a "crisis" earlier that day and went to the Mental Health Unit because another inmate whom she allegedly feared had been placed in her cell.  Pl.'s Dep. 25:7-12.  Defendant Brennisen offered Plaintiff the same option, and Plaintiff refused.  In light of this evidence, the Court cannot find that these Defendants acted unreasonably under the circumstances.  Therefore, the Court finds that no reasonable juror could conclude that a substantial threat of harm existed with respect to inmate Poole, or that Defendant Wilson and Defendant Brennisen were deliberately indifferent.

## August 30, 2012 Incident

Plaintiff complained to prison officials regarding the threats from Hale through PCU contracts and requests for KSF orders. Viewed in the light most favorable to Plaintiff, the Court can impute knowledge of Hale's threats to Defendant Thompson and Defendant Davidson, as they both signed off on the denial of the KSF. Based on this, the Court finds that a reasonable juror could conclude that these defendants, as well as Defendant Cerda, had knowledge of Plaintiff's assertions that Hale had made threats.

Even so, Plaintiff cannot show that these defendants were deliberately indifferent. On August 16, 2012, Plaintiff submitted a PCU contract against Hale and another inmate. On August 20, 2012, Plaintiff requested a KSF. Prison officials did not ignore Plaintiff's requests: Internal Affairs interviewed Plaintiff regarding the alleged threats and found them to be unsubstantiated. In addition, Plaintiff and Hale had been roommates previously in the PCU without incident.

Despite Plaintiff's protests, Defendant Cerda could not have been aware of any KSF in effect because there was not one. Assuming Defendant Cerda did not believe Plaintiff's statements

prior to placing her in the cell, this alone does not impose liability. See Riccardo v. Rausch, 375 F.3d 521, 525 (7th Cir. 2004) ("All that can be expected is that guards act responsibly under the circumstances that confront them. A guard may be responsible without being credulous."). At the time, the only information available to Defendant Cerda was Plaintiff's desire to not be placed in the cell. Nothing indicated that a fight was likely and prison officials had already investigated the alleged threats of harm. At best, Plaintiff has shown that Defendant Cerda should have known a risk was present, but negligence is not enough to impose liability. A showing of deliberate indifference requires more. Mayoral v. Sheehan, 245 F.3d 934, 938 (7th Cir. 2001).

Finally, Plaintiff admitted that Defendant Kretchmer did not have knowledge of any KSF requests or otherwise on August 30, 2012. Pl.'s Dep. 81:16-18. Defendant Kretchmer's role on that date was limited to observing the fight between Plaintiff and Hale and calling for assistance from other officers.

Therefore, the Court finds that no reasonable juror could conclude that Defendants Thompson, Davidson, Cerda or Kretchmer were deliberately indifferent.

**IT IS THEREFORE ORDERED:**

1) Defendants' Motions for Summary Judgment [62][64] are GRANTED.  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs.  Plaintiff remains responsible for the $350.00 filing fee.

2) If Plaintiff wishes to appeal this judgment, she must file a notice of appeal with this Court within 30 days of the entry of judgment.  FED. R. APP. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See FED. R. APP. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:     February 19, 2016.

FOR THE COURT:

*s/Sue E. Myerscough*
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
